IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| EL PASO NATURAL GAS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | CIV 96-049-PCT-RGS |
| | ) | CIV 99-223-PCT-RGS |
| vs. | ) | CIV 99-224-PCT-RGS |
| | ) | CIV 99-225-PCT-RGS |
| LAURA NEZTSOSIE and ARLINDA NEZTSOSIE, | ) | (not consolidated) |
| | ) | |
| | ) | **O R D E R** |
| Defendants. | ) | |
| | ) | |
| EL PASO NATURAL GAS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CORBERT TODACHEENIE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| CYPRUS FOOTE MINERAL COMPANY; CYPRUS AMAX MINERALS COMPANY; EL PASO NATURAL GAS COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FAYLENE and HARRY TOM YAZZIE, | ) | |
| | ) | |
| Defendants. | ) | |

```
CYPRUS FOOTE MINERAL COMPANY;  )
and CYPRUS AMAX MINERALS       )
COMPANY,                       )
                               )
            Plaintiffs,        )
                               )
     vs.                       )
                               )
DAWNY and RONALD ALLISON, et   )
al.,                           )
                               )
            Defendants.        )
```

## BACKGROUND

a. <u>Neztsosie case</u>, CIV 96-49-PHX-RGS

Defendants here, Laura Neztsosie and Arlinda Neztsosie ("tribal members"), filed a tort action in the Navajo Nation Tribal Court against El Paso Natural Gas Company ("El Paso" or "EPNG" or "mining company") alleging injury caused by exposure to radioactive materials[1] from mining activity in the 1950s and '60s. Rather than file an answer in the Navajo Tribal Court, El Paso filed a declaratory judgment action and application for preliminary injunction in the United States District Court for the District of Arizona. El Paso argued that the Price-Anderson Act, 42 U.S.C. §2210 <i>et seq.</i> is applicable and requires that the federal court

---

[1] All of the plaintiffs have been diagnosed with Navajo neuropathy, a debilitating degenerative disease, allegedly due to their exposure to uranium and other toxic metals on the Navajo reservation.

accept jurisdiction based on a defendant's right to remove the action from state court. The Neztsosies argued that the federal district court should allow the Navajo Nation Tribal Court to first consider whether it has jurisdiction over this action pursuant to Supreme Court case law that supports the tribal court exhaustion doctrine.

The district court entered an order which permitted any non Price-Anderson Act claims to go forward in tribal court and permitted the Price-Anderson Act claims to remain in federal court. The Court made no finding as to whether the tribal members' claims were or were not Price-Anderson Act claims because the Court determined that the tribal court should have the opportunity to first determine its jurisdiction. After the Court entered its order, plaintiff appealed to the Ninth Circuit Court of Appeals. The Ninth Circuit affirmed in part and reversed in part. The matter was then heard and decided before the United States Supreme Court.

The Supreme Court vacated the decision of the Ninth Circuit, and remanded with instructions to the district court to conduct "proceedings consistent with this opinion." The district court was directed to "decide whether respondents' [the Neztsosies] claims constituted 'public liability action[s] arising out of or resulting

from a nuclear incident,' 42 U.S.C. §2210(n)(2)" which would place the claims within the Price-Anderson Act. <u>El Paso Natural Gas Co. v. Neztsosie</u>, 119 S. Ct. 1430 (1999). The district court also must determine, if the tribal members' claims are encompassed under the Price-Anderson Act, whether the tribal court may hear the matter or whether the mining companies are entitled to the absolute right to have such an action heard in federal court when the Price-Anderson Act is silent about tribal removal but the Act evidences a clear preference for a federal forum.

These issues are the focus of the pending cross motions for summary judgment and for injunctive relief.

    b.    <u>Related cases</u>: CIV 99-223-PCT-RGS[2], CIV 99-224-PCT-RGS and CIV 99-225-PCT-RGS

On February 3, 1999, Cyprus Foote Mineral Company and Cyprus Amax Minerals Company ("mining companies") filed three cases that basically track the <u>Neztsosie</u> case. In each case, the mining companies move for summary judgment and a permanent injunction enjoining the tribal members from prosecuting their claims in the District Court of the Navajo Nation. The tribal members have not

---

[2] The <u>El Paso v. Todacheenie</u> case was also filed on February 3, 1999 but was assigned to the Honorable Robert C. Broomfield. The parties filed a joint motion to transfer the <u>Todacheenie</u> action, as a related case, to the Honorable Roger G. Strand. The motion was granted at oral argument on October 12, 1999.

4

filed separate cross motions for summary judgment in these cases but instead rely on their motion for summary judgment filed in the Neztsosie case.

c. Motion to Strike

El Paso moves to strike various factual assertions in the tribal members' motion for summary judgment and statement of uncontested facts in support of their motion for summary judgment. El Paso contends that some statements have no evidentiary support and others are "hotly contested factual issues." The current motions for summary judgment are not influenced by these allegedly inadmissible statements because the relevant facts for the pending motions are not in dispute. El Paso wants to ensure by this motion that they will not be bound by any of the statements the tribal members have made that are not supported by evidence. The Court will grant the motion to the extent any of the statements are not supported by admissible evidence.

**DISCUSSION**

a. Price-Anderson Act and Amendments Thereto

The mining companies contend that the Price-Anderson Act preempts all of the tribal members' claims. As the Supreme Court directed, this Court must determine whether the tribal members' claims are "public liability [actions] arising out of or resulting

5

from a nuclear incident, 42 U.S.C. § 2210(n)(2)." Neztsosie, 119 S. Ct. at 1439. Tribal members contend that their claims do not arise under the Price-Anderson Act because the Act is only intended to provide indemnification and financial protection for some nuclear activities. Tribal members argue that because the uranium mining at issue in the litigation was not indemnified or otherwise insured under the Price-Anderson Act, the tribal members' claims fall outside of the Act. In other words, the tribal members are attempting to limit the Price-Anderson Act to nuclear accidents involving activities covered by government indemnification and/or other insurance agreements only.

1. Statutory Language and Legislative Intent

The Price-Anderson Act, as amended, is best viewed in the context of the entire federal statutory scheme on nuclear power. Congress passed the Atomic Energy Act in 1946, which initially gave the federal government a monopoly with respect to the development of nuclear power. O'Connor v. Commonwealth Edison Co., 13 F.3d 1090, 1095 (7th Cir. 1994). Congress later determined, however, that the private sector should be included in the development of atomic energy. Therefore, Congress enacted the Atomic Energy Act of 1954 ("AEA"), which established the Atomic Energy Commission and gave it the authority to licence and regulate nuclear facilities. Id. See

6

42 U.S.C. § 2011-2281. The AEA failed to prompt the intended private sector entry into the field of nuclear energy because of a fear of potentially bankrupting liability absent some limiting legislation. Id; Duke Power Co. v. Carolina Environmental Study Group, Inc., 98 S. CT. 2620 (1978). Consequently, in 1957, Congress amended the AEA with the Price-Anderson Act, for the express purpose of "protecting the public and . . . encouraging the development of the atomic energy industry." Id.; El Paso Natural Gas Co. v. Neztsosie, 119 S. Ct. 1430 (1999). The Price-Anderson Act had three main features: it established a limit on the aggregate liability of those who undertake activity involving the handling or use of radioactive materials; it channeled public liability resulting from nuclear incidents to the federal government; and it established that all public liability claims above the amount of required private insurance protection would be indemnified by the federal government up to the aggregate limit on liability. Id.

The Price-Anderson Act was extended for an additional ten years in 1966. Congress added a requirement that indemnified persons waive certain common law defenses in the event of an action arising out of an Extraordinary Nuclear Occurrence ("ENO"). Additionally, the 1966 amendment provided for transfer to federal court of all claims arising out of an ENO. Id. (citing 42 U.S.C. § 2210(n)(2);

In re: TMI Cases Consolidated II, 940 F.2d 832, 852 (3rd Cir. 1991). As noted in O'Connor, 13 F.3d at 1095 (quoting Duke Power Co., 438 U.S. at 65-66), these provisions were premised on:

> congressional concern that state tort law dealing with liability for nuclear incidents was generally unsettled and that some way of insuring a common standard of responsibility of all jurisdictions--strict liability--was needed. A waiver of defenses was thought to be the preferable approach since it entailed less interference with state tort law than would the enactment of a federal statute prescribing strict liability.

The Price-Anderson Act was amended twice more, in 1975 and, more significantly, when Congress passed the Price-Anderson Amendments Act of 1988 ("Amendments Act") which is relevant to the instant case. The Amendments Act "expanded the reach of § 2210(n)(2) to provide for removal of, and original federal jurisdiction over, claims arising from any 'nuclear incident,' instead of actions arising only from ENOs." Id. Section 2210(n)(2) now provides in relevant part:

> With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place, . . . shall have original jurisdiction without regard to citizenship of any party or the amount in controversy. . . .

The Amendments Act defines a public liability action as "any suit asserting public liability." 42 U.S.C. §2014(hh). A public liability action is deemed to be an action arising under §2210, and the substantive rules for decision in such an action shall be

derived from the law of the State in which the nuclear incident occurs, unless such law is inconsistent with the provisions of § 2210. Id.

A nuclear incident is "any occurrence, including an ENO, within the United States causing ... bodily injury, sickness, disease, death, or loss of or damage to property or loss of use of property arising out of or resulting from the radioactive, toxic, explosive or other hazardous properties of source, special nuclear or byproduct material." Uranium is a "source material" that tribal members allege has caused their injuries 42 U.S.C. § 2014(z) along with mining wastes from the processing of the uranium which are considered "byproduct material", i.e., "the tailings waste produced by the extraction or concentration of uranium or thorium from any ore process primarily for its source material content." 42 U.S.C. § 2014(e).

It is against this statutory backdrop that the court must analyze the mining companies' claim that the present case is one for public liability. For the mining companies' argument to prevail, they must establish that the tribal members' claims are: 1) asserting legal liability; 2) resulting out of or from any occurrence within the United States, which; 3) arises out of or results from radioactive, explosive or other hazardous properties

of source, special nuclear or byproduct material. Because the claims are for personal injury resulting from the release of uranium and uranium tailings from the mining companies' miningسسsites on the Navajo reservation, the mining companies argue that the claims fall squarely within the plain wording of the statute.

The tribal members contend, however, that their claims do not fall within the Price-Anderson Act because there must be a release of radioactive material from a facility which is (1) licensed by the NRC and (2) covered by an indemnification agreement or other insurance-type agreement with the NRC. Because the mining companies were not covered by an indemnification agreement, the tribal members argue that there has been no "public liability" as that term is used in the statutory scheme and thus, they are not asserting Price-Anderson claims and accordingly, their claims are not preempted by the Price-Anderson Act. The tribal members rely primarily on Gilberg v. Stepan Co., 24 F. Supp. 325 (D.N.J. 1998).

In Gilberg, the court found that "the occurrence which underlies a nuclear incident, can only be an event at 'the location' or 'the contract location' as that term is defined in an indemnity agreement entered into under §2210. Id. at 339. Relying on this holding, the tribal members argue that because the mining companies have not entered into an indemnity agreement there is no occurrence

and thus, no nuclear incident.

The tribal members filed a supplemental submission of authority on October 4, 1999: <u>Heinrich v. Sweet</u>, 1999 WL 643359 (D. Mass. Aug. 16, 1999). The <u>Heinrich</u> court relied on <u>Gilberg</u> to conclude that "the necessary predicate to operation of the jurisdictional scheme [of the Price-Anderson Amendments Act] is the existence of an indemnification agreement between the government and the defendant with respect to the complained of activity." <u>Id</u>. at *9. The <u>Heinrich</u> court quoted from <u>Gilberg</u>: "In the absence of an indemnification agreement, entered into under 42 U.S.C. § 2210 and covering the activities which gave rise to the liability alleged, there can be no 'occurrence,' that is, no event at the site of a 'licensed activity,' that would constitute a 'nuclear incident.'" <u>Id</u>. (quoting <u>Gilberg</u>, 24 F. Supp. at 340.))

However, another recent district court case, <u>Carey v. Kerr-McGee Chemical Corp.</u>, 1999 WL 635669 (N.D. Ill. 1999), analyzed the <u>Gilberg</u> case and found its reasoning too narrow. Instead, the <u>Carey</u> court argued that by using certain language, the Price-Anderson Amendments Act provides for both indemnified and non-indemnified nuclear incidents. As an example, the <u>Carey</u> court discussed the availability of punitive damages and stated that "if the term nuclear incident were limited to sites subject to an

indemnity agreement, Congress would have simply eliminated punitive damages in all public liability actions. It did not do so, indicating that *a nuclear incident can occur at a site not subject to an indemnity agreement.*" Id. at *6 (emphasis added). The Carey court also noted that Congress, in enacting §2210(n)(2), wanted to create federal jurisdiction over all public liability actions arising out of or resulting from a nuclear incident. Id. at *7. In reviewing the Amendments Act, the Carey court pointed out that "the problem Congress was addressing was the lack of federal jurisdiction over, and the failure of federal law to apply to incidents that did not amount to ENOs," i.e., releases that are not substantial as determined by the NRC or releases that do not come from a facility covered by an indemnity agreement. Id. "Congress' response was to create preemption, removal and consolidation provisions extending *to all cases involving nuclear incidents.*" Id. (emphasis added).

As noted above, the language of the Amendments Act provides that "public liability" means *any* legal liability arising out of or resulting from a nuclear incident. "Public liability" is not defined in terms of indemnification or insurance coverage. Because plaintiffs' claims allegedly arise out of a nuclear incident, i.e., an occurrence causing bodily injury, sickness, disease arising out

of or resulting from radioactive, or toxic properties of source or byproduct material, the state law claims are preempted and fall within the Price Anderson Act. See Nieman v. NLO, Inc., 108 F.3d 1546, 1553 (6th Cir. 1997)(holding that a plaintiff "can sue under the Price-Anderson Act, as amended, or not at all"); O'Connor v. Commonwealth Edison Co., 13 F.3d 1090, 1099-1100 (7th Cir. 1994)(noting that "a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action"); and In re TMI II, 940 F.2d 832, 854 (3rd Cir. 1991).

Based on the foregoing, the Court finds that the tribal members' claims arise under the Price-Anderson Amendments Act and, therefore, will grant the mining companies' motions for summary judgment and deny the tribal members' motion for summary judgment.

    b.   Tribal Court Jurisdiction and Removal

Although the tribal members are correct in stating that the Price-Anderson Act does not place exclusive jurisdiction in the federal courts and that the removal provision in the Act is silent as to tribes, the broad removal provision demonstrates that there is a strong presumption that such cases belong in the federal courts.

The Supreme Court in Neztsosie engaged in a discussion of the

removal provision of the Amendments Act in considering whether the tribal exhaustion doctrine is applicable.[3] After discussing tribal exhaustion as being appropriate in a number of cases and indeed in most cases, the Supreme Court noted that "[t]his case differs markedly" because the Amendments Act provides an "unusual preemption provision, see 42 U.S.C. § 2014(hh)." Neztsosie,, 119 S. Ct. at 1436.

> The [Price-Anderson] Act not only gives a district court original jurisdiction over such a claim, . . . but provides for removal to a federal court *as of right* if a putative Price-Anderson action is brought in a state court. . . . Congress thus expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price-Anderson claim on the merits and for determining whether a claim falls under Price-Anderson when removal is contested.

Id. In holding that Price-Anderson actions are not subject to tribal exhaustion, the Supreme Court found that the reasons for the congressional policy of immediate access to a federal forum are as much applicable to tribal court as to state court litigation. The Court acknowledged the "absence of any statutory provision for removal from tribal court running parallel to the terms authorizing state-court removal might ground a negative inference against any intent to govern Price-Anderson actions in tribal courts." Id. at

---

[3] The Court notes, as do the tribal members, that the Neztsosie Court did not address the specific issue of jurisdiction as this court must but rather whether tribal exhaustion is applicable in the present situation.

1438. The Court went on, however, to state:

> But only the most zealous application of the maxim *expressio unius est exclusio alterius* could answer the implausibility that Congress would have intended to force defendants to remain in tribal courts. . . . Why, then, the congressional silence on tribal courts? . . . [I]nadvertence seems the most likely. . . . Now and then silence is not pregnant.

Id. at 1439.

The tribal members contend that in order for tribal court removal to be appropriate, the Price-Anderson Act must actually be rewritten to put in the words "tribal court" or in essence, the Court will be divesting the tribal courts of jurisdiction. Although the tribal members vigorously and correctly argue that Congress has not divested tribal courts of jurisdiction to hear Price-Anderson public liability actions, the removal provision in the Act demonstrates a strong preference for a federal forum[4] for defendants brought into state court pursuant to the Price-Anderson Act which should be equally applicable to tribal courts, notwithstanding Congressional silence.

As the mining companies note, however, even if removal from

---

[4] The Amendments Act provides "[w]ith respect to *any public liability action arising out of or resulting from a nuclear incident*, the United States District Court where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy."

tribal court cannot be accomplished because of the absence of such specific language in the statute, the proper approach for defendants in a tribal court to obtain the federal court jurisdiction that is strongly preferred by the unusual preemption language of the statute, defendants may bring a declaratory judgment action and seek a permanent injunction against tribal court proceedings. This is the method that the mining companies have used in these actions as a substitute for removal. The Court finds that such a procedure is an appropriate means of providing for the preferred federal forum when the statute fails to specifically note its applicability to tribes in its removal provision.

Accordingly, the Court will grant the mining companies' motions for permanent injunctions to prevent the tribal members from going forward in the Navajo court and deny the tribal members' application for permanent injunction.

Based on the foregoing,

**IT IS ORDERED** in CIV 96-49-PCT-RGS, denying defendants' motion for summary judgment [doc. #51-1] and denying application for injunctive relief [doc. #51-2].

**FURTHER ORDERED** in CIV 96-49-PCT-RGS, granting plaintiff's motion for summary judgment [doc. #57-1] and granting application for permanent injunction [doc. #57-2].

**FURTHER ORDERED** granting in part and denying in part plaintiffs' motion to strike portions of defendants' motion for summary judgment and defendants' statement of uncontested facts as set forth above [doc. #65].

**FURTHER ORDERED** in CIV 99-225-PCT-RGS, granting plaintiffs motion for summary judgment [doc. #11-1] and granting application for permanent injunction [doc. #11-2].

**FURTHER ORDERED** in CIV 99-224-PCT-RGS, granting plaintiffs' motion for summary judgment [12-1] and granting application for permanent injunction [doc. #12-2].

**FURTHER ORDERED** in CIV 99-223-PCT-RGS, granting plaintiffs' motion for summary judgment [#6-1] and granting application for permanent injunction [doc. #6-2].

**FURTHER ORDERED** denying defendants' motion to dismiss complaint [doc. #4].

DATED this 4th day of March, 2000.

_____
HONORABLE ROGER G. STRAND
U.S. DISTRICT COURT JUDGE